## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| TERRON NICHOLAS TAYLOR, | : | PRISONER HABEAS CORPUS |
| Petitioner, | : | 28 U.S.C. § 2254 |
| | : | |
| v. | : | |
| | : | CIVIL ACTION NO. |
| AHMED HOLT, | : | 1:17-cv-2331-TWT |
| Respondent. | : | |

## MAGISTRATE JUDGE'S ORDER AND FINAL REPORT AND RECOMMENDATION

Petitioner Terron Nicholas Taylor was incarcerated at the Phillips State Prison in Buford, Georgia, when he filed the instant *pro se* federal habeas petition pursuant to 28 U.S.C. § 2254.  Herein, Petitioner challenges his 2013 conviction and sentence in the Cobb County Superior Court.  (Doc. 1 at 1).

I.     Procedural And Factual History

A.     Procedural History

A Cobb County grand jury indicted Petitioner on September 20, 2012, and charged him with being a peeping tom.  (Doc. 20, Attach. 1 at 137-38).[1]  Petitioner was convicted of the offense following a jury trial on June 20, 2013, and was sentenced to five years of imprisonment.  (*Id.* at 139-41).

---

[1]     All documents are referenced according to the attachment number and page numbers given by the Adobe File Reader linked to the Court's case file database ("CM/ECF").

Through new counsel, Petitioner filed a direct appeal of his conviction and sentence, and raised the following enumerations of error:

(1)     the trial court erred in allowing testimony of prior bad acts from a 2011 case;

(2)     the trial court erred in denying Petitioner's *Jackson-Denno* motion;

(3)     the trial court erred in allowing the entry of a pair of black shoes into evidence without proper authenticity; and

(4)     the trial court erred in denying Petitioner's motion for a new trial on the grounds that:

(a)     the verdict is contrary to the evidence and without evidence to support it;

(b)     the verdict is directly and strongly against the weight of the evidence; and

(c)     the verdict is contrary to law and the principals of justice and equality.

(Doc. 20, Attach. 2 at 86-87).  The Georgia Court of Appeals affirmed Petitioner's conviction and sentence on July 1, 2015.  *Taylor v. State*, No. A15A0111 (Ga. Ct. App. July 1, 2015) (unpublished) (Doc. 13, Attach. 1).  The Georgia Supreme Court denied his petition for certiorari on October 5, 2015.  *See Georgia Supreme Court Docket Query*, available at https://scweb.gasupreme.org:8088 /results_one_record.php?caseNumber=S15C1676.

On October 16, 2015, Petitioner filed a state habeas petition in the Chatham County Superior Court, and filed an amended petition on December 7, 2015.  (Doc.

13, Attach. 2; Doc. 20, Attach. 1 at 62-68).  Therein, Petitioner raised the following

grounds for relief:

> (1)    the trial court erred when it allowed over objection the State's intent to introduce evidence of other crimes;

> (2)    the trial court erred when it denied Petitioner's motion to suppress statements to the police in connection with Petitioner's 2011 prior act of peeping tom;

> (3)    the trial court erred when it allowed over objection the admission of the shoes Petitioner supposedly wore the day of the current alleged incident of peeping tom;

> (4)    the trial court erred when it allowed over objection the admission of a video interrogation conducted by a Marietta police detective in connection with the 2011 prior act of peeping tom;

> (5)    the search warrant in the case was not served on Petitioner or his attorney and was not requested and granted in a timely manner prior to trial;

> (6)    Petitioner received ineffective assistance of appellate counsel because appellate counsel was unwilling to produce to Petitioner pictures of the property Petitioner submitted when arrested; and

> (7)    Petitioner received ineffective assistance of appellate counsel when counsel refused to correct inconsistencies Petitioner found in the appellate brief.

(Doc. 13, Attach. 2; Doc. 20, Attach. 1 at 62-68).[2]  Following an evidentiary

hearing on February 16, 2016, the state habeas court denied relief on April 6, 2016.

(Doc. 13, Attach. 3; Doc. 20, Attach. 8).  Petitioner filed an application for a

---

[2]    Although Respondent claims that Petitioner added three more grounds for relief in the amended petition, the grounds set forth therein appear to be the same as some of the grounds in his original petition.

certificate of probable cause ("CPC") with the Georgia Supreme Court on April 15, 2016 [Doc. 13, Attach. 4], which the Georgia Supreme Court denied on August 28, 2017 [Doc. 20, Attach. 3].

In the interim, Petitioner executed the instant federal habeas corpus petition on June 12, 2017, in which he attempted to challenge his Cobb County conviction and sentence. (Doc. 1). Respondent filed a motion to dismiss the petition as unexhausted, since Petitioner's CPC application was still pending with the Georgia Supreme Court. (Doc. 12). Before the Court had ruled on Respondent's motion to dismiss, the Georgia Supreme Court denied Petitioner's application for a CPC, and this Court then denied Respondent's motion to dismiss for lack of exhaustion. (Docs. 15, 16, 18).

Petitioner has raised the following claims herein:

(1)    Petitioner was denied his rights to due process when:

    (a)    his shoes were switched before trial;

    (b)    the State was allowed to introduce as evidence Petitioner's prior transactions of peeping tom;

    (c)    the State was allowed to introduce shoes alleged to be Petitioner's without laying a sufficient evidentiary foundation;

(2)    Petitioner received ineffective assistance of counsel on appeal when counsel:

    (a)    failed to petition the trial court to reproduce the clothes that Petitioner was wearing the night he was arrested that were introduced at trial;

4

(b)     included conflicting information in the amended motion for new trial; and

(c)     failed to correct inconsistencies in the appellate brief;

(3)     his conviction was obtained by the unconstitutional failure of the prosecution to disclose to Petitioner evidence favorable to the defense;

(4)     Petitioner has been denied an appeal because the Georgia Supreme Court has not ruled on his application for a CPC; and

(5)     Petitioner has been denied due process in light of all of the other grounds presented.

(Doc. 1).[3]

B.     Facts

The Georgia Court of Appeals made the following findings of fact, which this Court may presume to be true since Petitioner has failed to rebut the presumption of correctness with clear and convincing evidence:

> [T]he evidence at trial showed the following. Police officer N. S. testified that on July 10, 2012, he and Officer A. B. responded to a call from an apartment unit on Roswell Road. When they arrived at the location, he met with the complainant, who stated that "she believed that somebody was outside of her balcony," and that "she could see shadows moving in the windows and she thought she heard voices."
>
> After speaking with her, both officers exited through the breeze way toward the back of the building to check the apartment building. As soon as they exited, Officer N. S. saw Taylor standing "about arm's length away from the wall," "squared up with the window of [the

---

[3]     The undersigned has re-enumerated Petitioner's claims for ease of reference and discussion.

5

complainant's] bedroom," "peering into the window."   He testified that Taylor was wearing heavy baggy clothing, sweat pants that were ripped at the bottom and black "skateboard type shoes." Officer A. B. confronted him and asked, "what are you doing?" Taylor responded that he was doing nothing, and that he was working out.  He was then placed under arrest, frisked for weapons and taken into custody. Officer N. S. further testified that he retrieved a cell phone from Taylor that contained several photos of windowsills and individuals who were unclothed in their bedrooms.

The state also introduced the following evidence of other crimes or acts.  On July 15, 2011, after receiving numerous reports of suspicious activities consistent with a peeping Tom from the same apartment complex where the charged incident occurred, Officer B.V. went to conduct surveillance of one of the units. When the officer arrived, he sat still in the woods behind the apartment building, where he scanned the wood-line.   After an hour, he observed Taylor walking very slowly in a slightly crouched position between buildings 8 and 9. Taylor was dressed in a dark navy hooded shirt with the hood over his head; Taylor was scanning the area, as though trying not to be observed.  Shortly after making his observations, the officer, who was dressed in plain clothes, initiated contact with Taylor and asked, "what are you doing back here?"   Taylor responded that he "was walking the fence line as he does about the same time every night." The officer asked for Taylor's name, date of birth and social security number in an attempt to identify him.  Taylor identified himself as Trey Nicholas Taylor.  When the officer entered that name into the police database, he was unable to find an individual with that name. At that point, the officer obtained Taylor's apartment number and turned the investigation over to a detective.

At the trial for this case, the detective testified that she was aware of reports of prowler or peeping Tom incidents at that apartment complex, that officer B.V. had explained to her that "he had set up surveillance" in order to find the suspect, and that he had stopped an individual who identified himself as Trey Taylor.  When the detective checked the police database, she was unable to find an individual with that name. The detective then went to the leasing office, where she learned that "Terron Taylor was registered on that lease with his

mother."  Taylor was taken back to the police headquarters, where he was interviewed.

Initially, Taylor explained to the detective that he had been outside exercising at the time the officer confronted him, but denied having ever been near building 9.  Shortly thereafter, he admitted in the interview that he "may have been" lying down on the patio of the unit the officer was watching and "may have been" there on two previous occasions.  As the interview progressed, Taylor admitted that in addition to those two occasions, he may have been outside "that apartment or that patio or the window of that apartment probably another four to five times."  Thereafter, regarding the 2011 incident, Taylor pled guilty and was sentenced for criminal trespass, loitering and giving a false name.

(Doc. 13, Attach. 1 at 2-5).

III.   Discussion

   A.   Reviewable Claims

      1.   Standard Of Review

Under 28 U.S.C. § 2254, a federal court may issue a writ of habeas corpus on behalf of a person being held in custody pursuant to a judgment of a state court if that person is held in violation of his rights under federal law.  28 U.S.C. § 2254(a); *Cullen v. Pinholster*, 563U.S. 170, 181 (2011).  This power, however, is limited.  *See Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (stating that Section 2254 "constrains our review of legal questions decided on the merits in state court"

A federal court may not grant habeas corpus relief for claims previously adjudicated on the merits by a state court unless the state court adjudication

resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."28 U.S.C. §2254(b); *see Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010); *Johnson v. Upton*, 615 F.3d 1318, 1329 (11th Cir. 2010). "This is a 'difficult to meet,'... and 'highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt[.]'" *Cullen*, 563 U.S. at 181 (citations omitted); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010).

In applying 28 U.S.C. § 2254(d), a federal habeas court must first determine the applicable "clearly established Federal law," based on "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 404-05, 412 (2000). Next, the Court must ascertain whether the state court decision is "contrary to" that clearly established federal law by determining if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Id.* at 405-06; *see also Windom v. Secretary, Dep't of Corr.*, 578 F.3d 1227, 1247 (11th Cir. 2009).

If the Court determines that the state court decision is not contrary to clearly established federal law, the Court must decide whether the state court decision was an "unreasonable application" of clearly established federal law by concluding whether the state court identified the correct governing legal principle from the Supreme Court's decisions, but unreasonably applied that principle to the facts of the petitioner's case. *Williams*, 529 U.S. at 412; *Windom*, 578 F.3d at 1247. This reasonableness determination is objective, and the Court may not issue a federal writ of habeas corpus simply because it concludes in its independent judgment that the state court was erroneous or incorrect. *Williams*, 529 U.S. at 411; *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Valle v. Secretary for Dep't of Corr.*, 478 F.3d 1326, 1327 (11th Cir. 2007) (en banc). In other words, it does not matter that the state court's application of clearly established federal law was incorrect, so long as that misapplication was objectively reasonable. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011) ("For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.") (quotations omitted); *accord*, *Woodford*, 537 U.S. at 26; *Williams*, 529 U.S. at 411; *McIntyre v. Williams*, 216 F.3d 1254, 1257 n.4 (11th Cir. 2000).

Likewise, "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court

proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  When performing its review under § 2254(d), the Court must presume that the state court's determination of factual issues is correct unless the petitioner presents clear and convincing evidence that the state court determinations were erroneous.  28 U.S.C. § 2254(e)(1); *Windom*, 578 F.3d at 1247.

### 2. Petitioner Has Failed To Demonstrate Ineffective Assistance Of Appellate Counsel.

In Ground 2(a) as enumerated above, Petitioner claims he received ineffective assistance of appellate counsel because appellate counsel failed to petition the trial court to reproduce three State exhibits – the sweatshirt, sweatpants, and shoes Petitioner was wearing the night he was arrested.  Petitioner claims in Ground 2(c) that appellate counsel was ineffective because he failed to correct inconsistencies in the appellate brief.

### a. Ineffective Assistance Of Counsel Standard

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010).   "An ineffective assistance claim has two components:  A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687).  To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective

standard of reasonableness[.] . . .'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Secretary, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010). The court may "dispose of [the] ineffectiveness [claim] on either of its two grounds." *Atkins v. Singletary*, 965 F. 2d 952, 959 (11th Cir. 1992); *see Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

The *Strickland* standard also applies to claims of ineffective assistance of counsel on appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Brooks v. Commissioner, Ala. Dep't of Corr.*, 719 F.3d 1292, 1300 (11th Cir. 2013). To succeed on a claim of ineffective assistance of appellate counsel, as with a claim of ineffective assistance of trial counsel, a petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. A petitioner does not have a right to have every possible argument raised on appeal, and it is up to appellate counsel to "'winnow[] out' weaker arguments." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983); *Hittson v. GDCP Warden*, 759 F.3d 1210, 1263 (11th Cir. 2014).

Finally, appellate counsel is not ineffective for failing to raise a frivolous argument on appeal. *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).

> b.    The State Habeas Court's Decision As To Ground 2(a) Is Entitled To Deference.

The state habeas court reviewed Petitioner's claim in 2(a) that appellate counsel was ineffective for failing to petition the trial court to reproduce the items of clothing Petitioner was wearing on the day of his arrest, and found as follows:

> Petitioner alleges first that his appellate counsel was ineffective in that he failed to acquire certain documents and include them – particularly a photograph – on appeal when he addressed an issue regarding shoes admitted into evidence. Petitioner additionally argues at the hearing that [appellate counsel] was ineffective because he failed to acquire documents which would have shown the clothing, etc. that Petitioner was wearing on the night of the arrest. [Appellate counsel] testified that he raised the issue of the shoes on appeal and specifically raised the issue that the officer was unable to confirm what happened to the Petitioner's shoes after he took him to the jail with the shoes on. This issue was addressed by the Court of Appeals in their opinion where they state "items of evidence which are distinct and recognizable physical objects, such that they can be identified by the sense of observation, the rule is that such items are admissible in evidence without the necessity for showing a chain of custody." Therefore, the Court of Appeals found that there was no error in the trial court admitting the shoes into evidence. The Court finds that [appellate counsel] raised the issue of the shoes on appeal and additionally raised the issue that the officer did not know what happened to the shoes after Petitioner was arrested. The Court finds that appellate counsel was not ineffective since he investigated the issue and raised it on appeal. The Court finds that [appellate counsel]'s actions in raising the issue on appeal and addressing the issue that the officer did not know what happened to Petitioner's shoes after he was arrested did not fall below reasonable professional conduct. However, even if he did not provide exactly what Petitioner wanted him to include on appeal (the photograph), the Court finds that there is no evidence that

but for counsel's unprofessional errors, that the proceeding would
have been different.  The evidence before the Court is that [appellate
counsel] raised the issue on appeal.

(Doc. 13, Attach. 3 at 3-4).  Petitioner has not provided any evidence, let alone

clear and convincing evidence, to overcome the strong presumption that these facts

are correct.

Indeed, when appellate counsel was preparing for the appeal in this case he

read through the transcripts and tried to include issues he thought would be helpful

to Petitioner.  (Doc. 20, Attach. 4 at 10, 18, 29).  That transcript included trial

counsel's arguments that the shoes the prosecutor was attempting to enter into

evidence as Petitioner's did not have a sufficient evidentiary foundation *vis a vis* a

chain of custody.  Trial counsel asked that the jury be excused, told the court that

the shoes the State was trying to admit into evidence were not Petitioner's,

objected to their admission, and asked that the State authenticate the shoes by

describing them with particularity.  (Doc. 20, Attach. 1 at 192-94).  Still outside the

presence of the jury, the State asked the police officer to identify the shoes

Petitioner was wearing, which he described as "a skateboard type of shoe, very flat

on the bottom and just kind of thick and pretty much the opposite of what you

would want to do cardiovascular activity in. And they were just dark black, flat

bottom shoes." (*Id.* at 194).  The prosecutor continued to ask the officer a series of

questions to try to authenticate Petitioner's pants and shirt contained in the same

bag with the shoes, which the officer confirmed was the clothing Petitioner was wearing. (*Id.* at 198-99). The officer remembered thinking that those shoes would not have been appropriate for running, which is what Petitioner claimed he was doing when the officer found him near the victim's window; thus, the officer specifically remembered – and was adamant – that Petitioner was, in fact, wearing those shoes the night of his arrest. (*Id.* at 199-200). And despite the fact that on cross-examination Petitioner's trial counsel attempted to portray the officer as possibly being unsure, the officer responded unequivocally that those shoes were the shoes Petitioner was wearing the night of his arrest. (Doc. 20, Attach. 1 at 199-204).

Although it was unusual to do so, the trial court allowed Petitioner to testify – still outside the presence of the jury – that he actually was wearing black New Balance shoes on the night in question and that he had never seen the shoes presented in court. (*Id.* at 208-09). Trial counsel then argued that the chain of custody was not established, but based on the officer's identification thereof the trial court allowed the shoes to be introduced into evidence. (Doc. 20, Attach. 1 at 213-14). Before the trial resumed, however, the trial court instructed the jury that no matter what evidence the court allows to be introduced, the court is not "putting [its] stamp of approval on it," and that it was up to the jury what weight to apply thereto. (*Id.* at 218).

14

Because Petitioner was adamant that appellate counsel also argue on appeal that the shoes were improperly admitted into evidence since they allegedly were not properly authenticated, [Doc. 20, Attach. 4 at 14], prior to the motion for new trial hearing appellate counsel subpoenaed individuals from the sheriff's department to determine whether there was a video of Petitioner's booking procedure and/or documentation or login sheets.  (*Id.*).  Appellate counsel entered all of the documentation he received from the sheriff's department during the motion for new trial hearing in support of his challenge to the admissibility of the shoes.  (*Id.* at 15-16, 30-34).  At some point, Petitioner apparently sent appellate counsel a photograph of some of his personal effects, which counsel did not consider to be relevant for the record on appeal and so he did not include that photograph on appeal.  (Doc. 20, Attach. 4 at 15).  In sum, appellate counsel felt that he did all that he could to provide the most documentation to raise the issue on appeal that the shoes should not have been admitted into evidence.  (*Id.* at 16).

Based on those facts, the state habeas court rejected Petitioner's claim under *Strickland*, because appellate counsel, did, in fact, address the issue that the officer did not know what happened to Petitioner's shoes after he was arrested, and that, even if he did not include precisely what Petitioner wanted him to raise on appeal – *i.e.,* present the photograph showing Petitioner's clothes and shoes on the night of his arrest – there is no evidence that but for that error the proceeding would have

been different.  (*Id.* at 4).  Appellate counsel plainly cannot be deficient for failing to raise an issue that he did, in fact raise.  As in the state courts, Petitioner has neither demonstrated that counsel's decision was unreasonable professional behavior or that but for counsel's decision the result of the appeal would have been different.  Petitioner, therefore, has not demonstrated that the state habeas court's decision that appellate counsel was not ineffective was contrary to, or an unreasonable application of, *Strickland*, or based on an unreasonable application of the facts.  Accordingly, Petitioner is not entitled to relief in connection with Ground 2(a).

> c.    The State Habeas Court's Decision As To Ground 2(c) Also Is Entitled To Deference.

Petitioner claims in Ground 2(c) that appellate counsel was ineffective for failing to correct inconsistencies in his brief to the Georgia Court of Appeals.  The state habeas court found that Petitioner had not met his burden under *Strickland*, based on the following findings of fact in connection with this claim:

> Petitioner additionally argues that there were certain parts of the record that he wanted [appellate counsel] to change or correct on appeal.  Specifically, he wanted counsel to correct the date which he inadvertently said was 2014, to 2013, and to change work shoes to athletic shoes.  The Court finds that the failure of appellate counsel to make those minor changes does not fall below reasonable professional conduct in that those changes were incidental to the arguments made by counsel on appeal.  Additionally, even if those changes did fall below reasonable professional conduct, there is no evidence that the proceeding would have been different.

16

(Doc. 13, Attach. 3 at 2).  Petitioner has not demonstrated that this decision was unreasonable.

Petitioner claims here that the changes he wanted appellate counsel to correct in the brief included:  (1) the fact that appellate counsel described the shoes at issue as "black cumbersome workshoe [sic]" instead of what the State entered as a "skateboard shoe" and what his trial counsel described as a "jeans washed type blue jeans type color" (Doc. 1 at 28); and (2) appellate counsel's incorrect statement that Petitioner "interrupted the proceeding by standing up and yelling out, they're not my [Petitioner] shoes, your honor," when in fact Petitioner waited until the jury left the courtroom to claim that the shoes were not his.  (*Id.*).  Petitioner has not shown that appellate counsel's decision not to change the appellate brief was an unreasonable professional decision.

Pretermitting whether these errors were the same issues Petitioner raised in his state habeas petition, just as with those alleged inconsistencies the issues Petitioner claims appellate counsel needed to correct also were incidental to the actual claims.  And for that reason appellate counsel felt it unnecessary to make those minor changes.  (Doc. 20, Attach. 4 at 21).  Even if, as Petitioner suggests, appellate counsel's decision could be considered unreasonable professional behavior, Petitioner has not demonstrated how making those minor changes in the appellate brief would have changed the outcome of the appeal.  Petitioner,

therefore, has not demonstrated that the state habeas court's decision that appellate counsel was not ineffective was contrary to, or an unreasonable application of, *Strickland*, or based on an unreasonable application of the facts.   Accordingly, Petitioner is not entitled to relief in connection with Ground 2(c).

### 3.   Ground 3 Is Without Merit.

Petitioner argues in Ground 3 that the prosecution failed to disclose evidence favorable to him in violation of *Brady v. Maryland*.[4]   Specifically, Petitioner claims that an agent from the District Attorney's office applied for a search warrant for Petitioner's clothes and shoes approximately one week before trial on June 13, 2013, that this warrant was never disclosed to either him or trial counsel during the trial, and that he was deprived of a hearing thereon.  (Doc. 1 at 29).  He also claims that he did not know that the search warrant had been issued until after his amended motion for new trial was filed.  (*Id.*).  The state habeas court found this issue to be procedurally defaulted.  (Doc. 13, Attach. 3 at 2).[5]

---

[4]     In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment[.]"  *Brady*, 373 U.S. at 87.

[5]     Although, as Respondent points out, the state habeas court mistakenly found that Petitioner raised this claim on direct appeal and concluded it was therefore procedurally defaulted, the claim also would be procedurally defaulted under Georgia law because Petitioner had *not* raised the issue on direct appeal.  *See Head v. Ferrell*, 554 S.E.2d 155, 160 (Ga. 2001); *Gaither v. Gibby*, 475 S.E.2d 603, 604 (Ga. 1996).  *See also* Doc. 20, Attach. 2 at 124 ("The Respondent argues that the

In order to establish a *Brady* violation, Petitioner must show that: "'(1) the prosecution suppressed evidence; (2) the evidence was favorable to him; and (3) the evidence was material to the establishment of his guilt or innocence.'" *United States v. Jeri*, 869 F.3d 1247, 1260 (11th Cir. Sept. 5, 2017), *cert. denied*, __ U.S. __, 138 S. Ct. 529 (Dec. 4, 2017) (citations omitted).  Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Jeri*, 869 F.3d at 1260.

Petitioner complains about the search warrant used to obtain his clothing and shoes rather than the actual items themselves.  That search warrant, however, appears simply to be the State's method of retrieving Petitioner's clothing from the Cobb County Adult Detention Center in order to bring it to trial.  (*See* Doc. 20, Attach. 1 at 228) ("At this time, Affiant requests this search warrant to obtain the clothing that the defendant Terron Taylor was wearing the night of his arrest to be used against him at trial.").  Importantly, the State could have retrieved Petitioner's clothing – which had been kept at the Cobb County Adult Detention Center from the time Petitioner was arrested – without the search warrant.  *See United States v.*

---

grounds raised in 1-5 are procedurally defaulted under O.C.G.A. § 9-14-48(d) as this claim has *either* been previously decided upon direct appeal . . . *or* waived by failure to raise this issue timely on direct appeal.") (Emphasis added).  Although this Court could find that Petitioner's claim in Ground 3 is procedurally defaulted, since Respondent has opted not to pursue the procedural default of that claim the Court will review it.

*Edwards*, 415 U.S. 800, 806 (1974) ("[O]nce the accused is lawfully arrested and in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest *may lawfully be searched and seized without a warrant* even though a substantial period of time has elapsed between the arrest and subsequent administrative proceeding, on the one hand, and the taking of the property for use as evidence, on the other.  This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the 'property room' of the jail, and at a later time searched and taken for use at the subsequent criminal trial.") (emphasis added), *overruled on other grounds by United States v. Chadwick*, 433 U.S. 1 (1977).  Because the State was not required to get a search warrant to retrieve Petitioner's clothing and shoes from the Cobb County Detention Center to bring to trial, it is not clear what difference it would have made had the search warrant been provided to Petitioner and his attorney.  And because the actual items were, in fact, introduced into evidence at trial, it also is unclear how the disclosure of that search warrant would have made any difference, let alone create a reasonable probability that the result would have been different.

To the degree that this Court could construe Petitioner's claim that it was the actual clothing and shoes Petitioner was wearing on the night he was arrested, rather than the search warrant, that constituted the alleged undisclosed exculpatory

material, any such claim also fails.  Indeed, "the defendant must show, among other things, that he did not know about the existence of the exculpatory evidence." *United States v. Lowe*, 676 F. App'x 728, 730 (9th Cir. 2017). *See also United States v. Griggs*, 713 F.2d 672, 674 (11th Cir. 1983) ("Where defendants, prior to trial, had within their knowledge the information by which they could have ascertained the alleged *Brady* material, there is no suppression by the government.").  It goes without saying that Petitioner certainly was aware that his clothing and shoes were taken into property when he was arrested.  And, even if those items were, in fact, disclosed to him prior to trial, he has not demonstrated how any such disclosure would have changed the proceedings because, as discussed more thoroughly in Section II.A.2.b., Petitioner's argument that the shoes were not his was rejected by both the trial court and on appeal.  Petitioner, therefore, has not demonstrated that the State committed a *Brady* violation, and Petitioner is not entitled to relief in connection with Ground 3.

 B. <u>Non-Reviewable Claims</u>

  1. <u>Rules Regarding Procedural Default</u>

 Federal habeas review is generally barred for a claim that was procedurally defaulted in state court.  As the Eleventh Circuit has explained,

> [p]ursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a

> manner not permitted by state procedural rules is barred from
> pursuing the same claim in federal court . . . .

*lderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994) (citations omitted). Thus, a claim not previously raised in state court is procedurally defaulted when it is clear that a state court would find that it is "barred by [state] law" from considering the merits of the claim. *Castille v. Peoples*, 489 U.S. 346, 351 (1989). A claim also is procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See Coleman v. Thompson*, 501 U.S. 722, 734-35 &n.1 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("This Court has held that where the state court correctly applies a procedural default principle of state law, federal courts must abide by the state court's decision.") (quotation marks omitted).

Under Georgia law, a ground for relief that is not raised on direct appeal generally cannot be asserted later in a state habeas petition unless the petitioner shows cause and prejudice for the failure to raise the issue on direct appeal. *Head v. Ferrell*, 554 S.E.2d 155, 160 (Ga. 2001); *Gaither v. Gibby*, 475 S.E.2d 603, 604 (Ga. 1996). Georgia law also requires a petitioner to raise ineffective assistance of trial counsel claims at the "earliest practicable moment." *See Williams v. Moody*, 697 S.E.2d 199, 201-02 (Ga. 2010) (discussing obligation to raise ineffective assistance of trial counsel at the earliest practicable moment); *White v. Kelso*, 401 S.E.2d 733, 734 (Ga. 1991) ("New counsel must raise the ineffectiveness of

previous counsel at the first possible stage of post-conviction review" during a motion for new trial or, if newly appointed for appeal, on direct appeal – or such claims are waived and procedurally defaulted.).

A federal habeas petitioner can overcome a procedural bar if he demonstrates either (1) cause for the default and actual prejudice, or (2) a fundamental miscarriage of justice, *i.e.*, that unless the federal court reviews the defaulted claim, the petitioner will remain incarcerated despite his actual innocence. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 488-89, 495-96 (1986); *Owen v. Secretary for Dep't of Corr.*, 568 F.3d 894, 908 (11th Cir. 2009). To establish cause, the petitioner must show that some objective factor external to the defense impeded his or counsel's efforts to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result would have been different" had he presented his defaulted claim. *Spencer v. Secretary, Dep't of Corr.*, 609 F.3d 1170, 1180 (11th Cir. 2010) (quotation marks and citations omitted). To establish a fundamental miscarriage of justice, *i.e.*, "that constitutional error has caused the conviction of an innocent person," petitioner must present "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial[,]" which demonstrates that "it is more likely than

23

not that no reasonable juror would have convicted him" if the underlying offenses. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Scarlett v. Secretary, Dep't of Corr.*, 404 F. App'x 394, 400 (11th Cir. 2010).   The actual innocence exception is "exceedingly narrow in scope," and the petitioner must demonstrate that he is factually innocent rather than legally innocent.  *San Martin v. McNeil*, 633 F.3d 1257, 1267-68 (11th Cir. 2011) (quoting *Bousely v. United States*, 523 U.S. 614, 623 (1998)).

2.   <u>Grounds 1(a), 1(b), 1(c), and 2(b) Are Procedurally Defaulted.</u>

In Grounds 1(a), 1(b), and 1(c), Petitioner argues that his due process rights were violated when:  his shoes were switched before trial; the State was allowed to introduce evidence of prior transactions; and the State was allowed to enter shoes alleged to be Petitioner's without laying a sufficient evidentiary foundation, respectively.   In Ground 2(b), Petitioner claims that he received ineffective assistance of appellate counsel because appellate counsel included conflicting information in the amended motion for new trial.  Respondent argues that these claims are procedurally defaulted since Petitioner did not raise them in the state courts.  The undersigned agrees.

a.   <u>Petitioner Never Raised The Federal Constitutional Claims He Now Attempts to Raise In Grounds 1(b) and 1(c).</u>

On direct appeal and in his state habeas case, Petitioner raised a state law claim that the trial court erred in allowing the prior transactions into evidence. (*See* Doc. 13, Attach. 2 at 5; Doc. 20, Attach. 2 at 86-97). Likewise, Petitioner only raised a state law claim in both his appeal and his state habeas corpus proceedings that the State should not have been allowed to enter his shoes into evidence without a sufficient evidentiary foundation. (Doc. 13, Attach. 2 at 5; Doc. 20, Attach. 2 at 102-04).

To the degree that Petitioner now attempts to raise federal due process claims with regard to these grounds for relief, those federal constitutional claims are unexhausted since he did not fairly present them to the state courts.[6] *See Hartge v. McDonough*, 210 F. App'x 940, 943 (11th Cir. 2006) (affirming district court's dismissal of federal constitutional claim as procedurally defaulted where the petitioner only raised the claim under state law in the state courts). *See also Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United

---

[6]     In response to Respondent's argument that Petitioner never raised these issues as federal constitutional claims, Petitioner simply states – with no supporting facts – that he raised the claims in state court and thus the claims are exhausted. (*See generally* Doc. 21).

States Constitution."); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("[T]o exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.").  Because Petitioner never raised these federal due process claims at trial or on appeal, he would now be prohibited from raising the federal issues in Grounds 1(b) and 1(c) in state court. *See* O.C.G.A. § 9-14-48(d); *Head v. Taylor*, 538 S.E.2d 416, 418 (Ga. 2000) ("The failure to raise an issue on direct appeal that could have been raised at that time defaults that issue on habeas corpus[.] . . .").  Thus, these federal constitutional claims are procedurally defaulted and Petitioner has not demonstrated cause, prejudice, or that he is actually innocent to excuse the procedural default. Accordingly, this Court cannot review Petitioner's due process claims raised in Grounds 1(b) and 1(c).

           b.    <u>Petitioner Never Raised Any Specific Claim That His Shoes Were Switched Before Trial Or That Appellate Counsel Was Ineffective For Including Conflicting Information In The Amended Motion For New Trial.</u>

In Ground 1(a) Petitioner argues that his due process rights were violated when his shoes were "switched" before trial.  As discussed previously herein in Section III.A.2.b., Petitioner raised a claim in his state habeas petition that appellate counsel was ineffective for failing to petition the trial court to obtain the clothing and shoes that were admitted into evidence.  And as discussed in Section III.B.2., Petitioner raised a claim on appeal and in his state habeas petition that the

26

trial court erred in allowing the shoes that he maintained were not his to be admitted into evidence.  Petitioner, however, never raised the particular claim he now raises – *i.e.,* that the shoes were switched before trial – before the state courts, other than as part and parcel of his claim that the shoes should not have been entered into evidence.  Petitioner has not demonstrated cause or prejudice, or that he is actually innocent to excuse the procedural default of this claim.  Thus, this Court cannot review Petitioner's claim raised in Ground 1(a).

Petitioner claims in Ground 2(b) that appellate counsel was ineffective for "including conflicting information" in the amended motion for new trial.  In his state habeas petition, Petitioner raised a claim that appellate counsel included conflicting information in the *appellate* brief, but he did not raise a claim of conflicting information in the *amended motion for new trial*, and has not demonstrated cause, prejudice, or that he is actually innocent to excuse the procedural default.  Regardless, for the same reasons as discussed in Section III.B.2.c with the alleged inconsistencies in the appellate brief, any claim of conflicting information in the amended motion for new trial is without merit.  Thus, Petitioner is not entitled to relief in connection with Ground 2(b).

C.    Claims That Don't State Grounds For Federal Habeas Relief

Petitioner raises two final claims:  in Ground 4, that he has been denied an appeal because the Georgia Supreme Court has not ruled on his CPC application;

and in Ground 5, that he has been denied due process in light of all of the other grounds presented. To the degree that Petitioner complains about the Georgia Supreme Court's failure to decide his CPC application, any such challenge to post-conviction proceedings do not state a basis for federal habeas relief. *See Etsy v. Secretary, Fla. Dep't of Corr.*, No. 15-13574, 2017 WL 3393405, at *2 (11th Cir. Mar. 10, 2017) ("Both claims challenge Mr. Esty's post-conviction proceedings, which are not cognizable claims on federal habeas review."); *Abrams v. Warden*, No. 16-15449-F, 2017 WL 3634387, at *5 (11th Cir. Mar. 29, 2017) ("The district court properly concluded that this claim was not a basis for federal habeas relief, as it was attacking a defect in the state collateral proceedings."); *Hill v. Humphrey*, 662 F.3d 1335, 1363 (11th Cir. 2011) ("[P]rocedural violations during state post-conviction proceedings are issues unrelated to the cause of the petitioner's detention. As such, they cannot form the basis for habeas relief.") (quotations and citations omitted) (Tjoflat, J., concurring); *Carroll v. Secretary, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009) ("This Court has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief."). In any event, the Georgia Supreme Court's ruling on Petitioner's CPC application renders this claim moot. Thus, Petitioner is not entitled to relief in connection with Ground 4.

Petitioner claims in Ground 5 that all of the other issues he has raised together result in a due process violation. In other words, Petitioner attempts to

raise a "cumulative error" claim.  (*See* Doc. 21 at 10).  "The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal."  *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005), *abrogated on other grounds by Davis v. Washington*, 547 U.S. 813 (2006) (internal quotation marks omitted).

Respondent argues that this claim for relief is not cognizable in habeas corpus review because it does not allege a violation of "clearly established law" within the meaning of 28 U.S.C. § 2254(d)(1) and/or is barred by *Teague v. Lane*, 489 U.S. 288 (1989) since the Supreme Court has not adopted a cumulative error analysis for use by state prisoners in federal habeas cases.[7]  (Doc. 19, Attach. 1 at 17).  Nevertheless, this Court need not decide that issue because Petitioner has not met the cumulative error standard.

Indeed, the Eleventh Circuit has approached this issue by assuming, rather than deciding, whether under current Supreme Court precedent cumulative error could ever succeed under the AEDPA.  *See Hill v. Secretary, Fla. Dep't of Corr.*, 578 F. App'x 805, 810 (11th Cir. 2014) ("[W]e need not decide [whether a cumulative error claim would be cognizable in habeas corpus] here because, even

---

[7]  Indeed, the Sixth Circuit has held that cumulative error claims are not cognizable in habeas corpus proceedings because the Supreme Court has not spoken on the issue. *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).

assuming a claim of cumulative error is cognizable in federal habeas proceedings, Hill would not be able to satisfy that standard."); *Morris v. Secretary, Fla. Dep't of Corr.*, 677 F.3d 1117, 1132 n.3 (11th Cir. 2012) ("We need not determine whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of the AEDPA can ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law.  For our purposes, it is enough to say that Morris's cumulative error claim clearly fails in light of the absence of any individual errors to accumulate.").  Instead, the Eleventh Circuit reviews whether the petitioner alleging a cumulative error theory would be able to satisfy that standard by examining each individual error, as well as any error in the aggregate and the trial as a whole, to determine whether a defendant was afforded a fundamentally fair trial.  *See Hill*, 578 F. App'x at 810; *Morris*, 677 F.3d at 1132 & n.3.  And where, as here, the individual claims fail, there are no individual errors to accumulate; therefore, no cumulative error exists.  *See United States v. Mosquera*, 886 F.3d 1032, 1052 (11th Cir. 2018) ("The appellants' cumulative error argument fails because they have been unable to identify any actual error."); *Hill*, 578 F. App'x at 810 ("Even if we assume a claim of cumulative error is cognizable, Hill has failed to demonstrate that the combination of the four alleged errors here would meet the standard."); *Morris*, 677 F.3d at 1132 ("Plainly, Morris's cumulative error claim

must fail.  As demonstrated above, none of Morris's individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate."). Accordingly, pretermitting whether "cumulative error" is a claim cognizable in §2254 cases, Petitioner has not demonstrated that he is entitled to relief in connection with Ground 5.

IV.   Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that the instant § 2254 habeas petition [Doc. 1] be **DENIED** and that this action be **DISMISSED**.

**IT IS ORDERED** that Petitioner's motion for final disposition [Doc. 22] be **DENIED AS MOOT**.

V.   Certificate Of Appealability ("COA")

According to Rule 11 of the Rules Governing Section 2254 Proceedings for the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(2), a COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  A prisoner satisfies this standard by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong and that any dispositive

procedural ruling by the district court is debatable.  *Miller-El v. Cockrell*, 537 U.S. 322, 366 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Petitioner has failed to make a substantial showing that reasonable jurists would find "debatable or wrong" the undersigned's conclusions that Petitioner's grounds for relief are without merit or are procedurally barred.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED AND ORDERED** this 12th day of June, 2018.

JUSTIN S. ANAND
          UNITED STATES MAGISTRATE